May it please the Court, my name is Mark Hill and I represent the appellant Terry Clauff. I'd like to reserve 60 seconds for rebuttal. In the underlying case, the District Court awarded summary judgment to Menard against Mr. Clauff for a breach of a lease assignment that was entered into on behalf of DKC Columbus with Menard's. The Court held Mr. Clauff was liable, as a matter of law, under Nebraska Revised Statute 21-2635 because he executed the lease assignment on behalf of DKC Columbus before DKC Columbus was properly formed. The District Court reasoned that Mr. Clauff did not and could not have authority from DKC at the time of the execution because DKC Columbus did not exist. Thus, the District Court reasoned Mr. Clauff was liable even if that was not the party's intent. The District Court erred in reaching this conclusion for three reasons. First, under Nebraska law, Mr. Clauff had DKC Columbus's authority before the lease assignment became effective and before DKC incurred any obligation under that lease assignment. Second, the District Court erred by refusing to account for the party's intent as manifested in the lease assignment as well as the course of dealings between the parties. Let me just stop you because I've got a fact question here that strikes me as significant. The background section of the District Court's Memorandum of Order begins, Plaintiff Menard, well no, the second paragraph, In an agreement executed on February 12, 2007, Dial Columbus and DKC Columbus accepted assignment of Menard's rights and liabilities. I don't see any reference to Dial Columbus in that document. And that's correct, Your Honor. But what was the District, what was the, you know, isn't that just a plain fact error? I think it is. The context of Dial Columbus and how they became involved in this lawsuit was that Dial Columbus was also a Nebraska limited liability company and they actually were the ones that negotiated a purchase agreement with Menard's that was prior to February, that was in August of 2006. If this was accurate, then Mr. Kvaal was acting on behalf of an existing LLC. Well, right, and in the purchase and sale agreement, Dial Columbus agreed for it and another related entity to assume obligations under the sublease. And that sublease then was not executed at that time. The sublease contemplated that this company, DKC Columbus, would be the actual ones on the sublease. It was Exhibit B to the purchase agreement. And the February exchange was right before the closing on the purchase agreement and it was executed on behalf of DKC Columbus by Terry Clough. So he was also acting on behalf of Dial Columbus, but that came through the purchase agreement. And your position is on the assignment, DKC is the only entity. On the assignment, that is the only entity that is recognized on the document, correct? Counsel, there was a purchase agreement to buy this land for Menard's to go to a different shopping center area and build a store. And in paragraph 30 of that purchase agreement, the agreement says, as a part of this transaction, Dial and Dial's sign hereby agree to assume responsibility for the existing lease between Menard and Walmart for the rental space located in the West Gate in Columbus, Nebraska. That's their old location, right? Correct. Dial shall pay any and all rents and satisfy all other obligations under the lease and shall indemnify Menard from any obligation Menard may have under the lease arising on or after the effective date defined in the lease, the lease assignment consent and release agreement, which is what you're talking about, Exhibit B. And then later, when Exhibit B was actually executed, that's when JKC, whatever the other corporation, where Clough signed on behalf of that limited liability corporation. So you have an existing LLC that had assumed this liability and you have a new one, which at the time that was executed, was not in existence. Isn't that correct? But before the effective date of people hiring or, I mean, paying for the lease payments because Menard's continued to occupy that space and paid the lease after this until they moved over to the other store. Isn't that right? That is correct, Your Honor. And at that point in time, DKC was up and running and their papers had been filed. Correct. DKC Columbus became properly filed on October 30, 2007. The new Menard store did not open until April 29, I believe it was, 2008. After that time, DKC Columbus made two installment payments, right? The record's not entirely clear as to the amount, but I think it's implied from the record that they, correct, because the default wasn't until August of 2008. And the same officer of Menard signed both of these documents. Isn't that right? That is correct, Your Honor. And, indeed, a third document after the lease agreement, which reflects Dial as the partner. I'm not familiar with what. Second Amendment to Purchase and Sale Agreement dated February 23, 2007 after the lease agreement. Correct, Your Honor. Who's the party that he signs for? Dial. Dial, correct. Correct, Your Honor. Why isn't this Part 3? Well, we argued that this is Part 3. I believe what Appley would say is that. It's not the article you make in the brief. Well, we do argue that. You said DKC was the only one involved here when the documents and evidence did not support that. Well, I apologize, Your Honor. I might have misspoke. I didn't mean that they were the only one involved. In fact, both Dial Columbus and DKC Columbus were defendants in the underlying matter and were also found joint and severally liable. So they were definitely involved. I think what, and not to argue against my case, but I think what Appley would say is that there was the factual finding in Part 3, that there was a factual finding there made by the district court that it was made behalf on the one corporation. There was a bench trial. Right, exactly, and that is our point. Exactly. And that's why we. Why isn't the need for a bench trial on all fours with Part 3? I think it is, Your Honor. All of your wonderful arguments about what Nebraska law is and should be. Well, I think you're right that terminating the intent of the parties is something that's a factual question that does require a trial, and that is something that we argue down below and that obviously didn't argue as well as we'd hoped to here in our briefing. And the district court just got the facts wrong. I agree on that, Your Honor, but I also think there is. Obviously, I'm confident it wouldn't do after a bench trial. Correct, because there would be opportunity to develop those facts. Correct. So what's your new position? What facts do you say should be developed in a trial? Well, I think going to what Judge Loken and Judge Beam have been discussing about as far as the intent of the parties, what they intended. What specific intent questions do you think should be resolved in a trial? Well, I think who was responsible under the lease assignment, what the parties intended as far as whether Terry Clough would be personally liable on this matter. I think there are a host of factual questions. You ought to list them specifically because it sounds like you're now adopting a new argument that you didn't brief, so I just want to be clear what you say should be tried. Well, I think another issue that should be tried is whether or not Terry Clough had authority by the time the lease became effective, and that was something that was thoroughly briefed. And the fact is, is that under Nebraska law, that an entity can adopt a contract, and when they do so, it provides original authority as if it was made at the time of the act. That's called ratification, isn't it? Well, it is called either. In Barnhart v. Henderson, which is found at 24 Northwest 2D 654, it talks about both adoption and ratification. The district court made a conclusion that this could not be a ratification under the authority of Stollmeyer v. Beck because under ratification, the authority would relate back to the time of the act. Do you need an ovation for ratification to be possible? Well, there is case law outside of Nebraska that's saying that cases do hold that. However, I would say this case is very distinguishable from that for the purpose that none of the parties intended Mr. Clough to be liable. So the typical ovation situation would be when a promoter signed behalf on a corporation in formation and everyone knew that that was the case because everyone would understand that the party would be personally liable. I have another question of law, I think it is, here for both you and counsel for Menards. The statute that you keep saying he had authority to do this and he had authority to do that. The Nebraska statute involved here reads, I'm sure, all persons who assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities of the company. Has the Nebraska Supreme Court ever interpreted that statute? No, Your Honor. We were unable to find any case where they interpreted that statute. Without authority from whom? Exactly. I mean, I think the district court said without the authority of the LLC. Well, it could be perhaps the authority of the state of Nebraska because the state of Nebraska says that an LLC isn't a viable entity until the papers are filed with the Secretary of State of Nebraska. Here, the papers were done, but they were never filed and it wasn't a viable LLC then, was it, until they were filed with the Secretary of State? That's correct. Under Nebraska law, it would not be a viable LLC until the filing. So how many people are necessary to form an LLC in Nebraska? I forgot to look at that, but can one person? I believe one person could. So who would he get authority from if he could form an LLC by himself? Well, from the entity, which would be. . . Who would he be jointly liable with?  I mean, I suppose under the. . . Neither you nor Menards have discussed what this statute that you're both relying on making a COF individually liable means. Right, and I think, you know, unfortunately there are not any Nebraska Supreme Court cases on this and it's doubtful there ever will be. As a matter of law, it's up to us or it was up to the district court to interpret it and tell us what that means. If it's going to be applied to make your client liable or not. Is that right? Correct, Your Honor. It would be up to predict what the Nebraska Supreme Court would do based on any indication the Supreme Court has given. And I think it's absolutely key to recognize that when we're talking about this authority, when he entered this lease assignment, the lease assignment was very clear and all parties intended that the lease assignment would not become effective until after the new Menards store was open. And this would serve a couple of purposes. I think you mentioned that Judge Beam, one of them would allow Menards to continue at their old store during this time. In Section 4 of the lease assignment, it contemplates this idea and says up until the effective date, everything stays as is. And Menards would hold DKC Columbus. That was contained in the purchase agreement too, that language. Similar language. Yes, Your Honor. So basically what you have there is a condition precedence that says until this occurs, until the new store opens, there's no lease assignment. There's no binding obligation upon DKC Columbus. And because of that, it sprung to life once the Menards store did open, which was in April of 2008, which by that time, Mr. Klauff did in fact have the authority of DKC Columbus to act on its behalf. I'll reserve the rest of my time for rebuttal. Thank you. Mr. George. Thank you, Your Honors. May it please the Court. Cory George on behalf of the Appalachee Menard, Inc. I'll start by addressing Judge Beam's question. It's the position of the Appalachee, Your Honor, that you have the one section of the statute, and everyone understands these are all now repealed. And so we're going back to the statute. We're applying the statute. There's no dispute that this statutory scheme was in effect and applied to this transaction. The uniform law has now been adopted, and this is? Yes, Your Honor. And so both sides cite and rely upon 21-2635, which Judge Beam read from. It's the position of the Appalachee, Your Honor, that reference also needs to be made, as the district court did, to 21-2608, which talks about what an LLC can and can't do. And in that statute it says, a limited liability shall not transact business or incur indebtedness except to the extent it's incidental to the formation of that entity until the Secretary of State of Nebraska has issued a certificate of organization. Which happens when you file the papers. Exactly, Your Honor. And so without authority read in conjunction with that statutory section. Authority from whom? Authority from the Secretary of State  would be the position of the Appalachee, Your Honor. So it's your position that 21-2635, the authority mentioned there is the authority of the state of Nebraska. I believe it has to be, Your Honor. Otherwise, if you read those inconsistently, someone could have authority but not be permitted to act under state law. And so the... Authority from themselves or if there were other members of the putative LLC have authority from them? Is that what you're saying? No, I think authority there has to mean to consistently interpret the statutory scheme as a whole as the authority is the Secretary of State issuing a certificate of organization. Otherwise, as Your Honor pointed out, if you have a sole member LLC, they could essentially give himself authority. Who does he ask? But suppose a member acts beyond his authority from the company, a properly formed company, does the statute apply in that situation? 2635? No, because you have a... In your example, Your Honor, you have a properly formed LLC. So they would not act... They would have authority to act, but they... And as Judge... Suppose the agent acts beyond his authority from the LLC, though. You would have, I think, as Judge Girard addressed in his order, in that instance, you may have other members of that LLC have a claim for contribution or some sort of breach of fiduciary duty as among the members, whoever they may be in that organization. But as to the third party here, they would be contracting, in your example, Your Honor, with a properly formed LLC. There would be no basis, then, for promoter liability in that example. Now, I've got a fairly simple answer to this case, and you need to tell me what's wrong with it. Sure. Part 3, what I consider the critical sentence in the Supreme Court of Nebraska's decision says, since the court was not clearly wrong after a bench trial in finding that Livingston was contracting as an agent for a corporation that was in existence when the contract was executed, the statute there, the Model Business Corporation Act counterpart, is not applicable to the case at bar. And I look at the trial court's opinion, factual background, and he says the agreement executed on February 12th, despite the appearance to the contrary, Donald Columbus and D.K.C. Columbus accepted assignment of Menard's rights. Now, that tells me that, particularly given the literal language of the purchase agreement and the reference to Exhibit B, plus the Menard's vice president 20 days later entering into a kind of a companion agreement, which Dow was the party, that tells me that there's enough facts here for, after a bench trial, for the court to make the same finding that was made in Part 3, that is, that Mr. Clough was acting in signing the lease agreement on behalf of an existing, as well as a non-existing LLC. Therefore, we need a trial. Why isn't that correct? Let me come at it this way, Your Honor. There's different agreements. There is the purchase agreement, which is with Dow Columbus. I'm just talking about a glaring ambiguity which requires extrinsic evidence as to the party's intent, which is critical. Let's go get it. The first time I've heard any suggestion that DKC Columbus, the entity that was not formed in a timely manner, is somehow the argument is that this Exhibit B, this lease assignment that's at issue here, is somehow meant to be signed by Dow Columbus, the other entity, that's the first time I've ever heard that argued in this case. If that was the argument, Your Honor, then I think you would have potentially a more analogous situation to Par 3. As Judge Girard found here, the intent. So you're saying that my theory can't be invoked because nobody else thought of it? Well, I don't know that that issue was preserved, but no. The documents preserve it. Your Honor, Judge Girard found the intent that they were looking at in Par 3, which entity was meant to be a signatory on the particular document. That was the fact question that they looked at intent in that case. Here, it's undisputed, and it's not even really contested, that the lease assignment. But it's mutual intent. I mean, your client's same vice president signed all three of these agreements with this glaring inconsistency, making it pretty clear that Menards was not worried at the time about which LLC would finally be the operative lessee or lessor, I guess, when the store opened. And if this is all about intent, let's go find out what it was. I would suggest to you, Your Honor, it's not all about intent for a couple of reasons. One is it's undisputed the lease assignment lists DKC Columbus LLC as the signatory to that document. Terry Clough signs on behalf, at that point in time, of an unformed LLC. He also signed the sale agreement, which contained the same language, but for dial. Yes, he did, Your Honor, but a different. Was it dial Columbus or PKC Columbus that sent you the two checks that were received after PKC had been fully authorized by the State of Nebraska that you obviously took and cashed, and you say it was a phantom to the extent that you would personally hold Clough personally liable for these lease payments? That would have been DKC, Your Honor, the signatory to the lease assignment. Are you sure it wasn't dial? Well, these parties, I'm not sure, Your Honor, but I know under the lease assignment. Virtually interchangeable parties, right? I don't know. In the record, I can tell you that DKC Columbus LLC is listed as a different signatory under the lease assignment. They become responsible, and they subsequently do file articles of organization with the State of Nebraska. And once you get those facts, Judge Girard said under Nebraska law, when the statute is clear, and it is clear in this context, the Par 3 case analyzed a different statute that dealt with corporations, which Judge Girard acknowledged. There is an exception. A critical difference is in the corporation statute, which is 21-2020, it allows for the defense of mistake. Whereas the LLC statute at the time just says, thou shall be joint and severally liable. And once you get that far on these facts, DKC is a signatory to this document. They're not formed. The Par 3 says that we're looking at intent. Evidence which demonstrates that talents were aware they were entering into a contract with Castle Development, which was the corporation, is enough to defeat the appearance that he was acting for a not yet formed corporation. There's no mistake involved. We're talking about what did the parties actually intend, which is not apparent from these documents. So I understand the point that there is a difference, but it doesn't seem to me to be significant. I think it is significant for the reason that Judge Girard found, Your Honor, and that is you've got a different statutory scheme in the Par 3 case. And, again, the intent they were looking at was who is the signatory to this document. That's not at issue here. There's no dispute that DKC, Columbus, LLC, is the signatory to the lease assignment that we're talking about here. And Judge Girard was a justice of the Supreme Court that decided the Par 3 case. So he was in a unique position to understand the difference between that case and this case. But I don't think he had the facts correct. He wrote the facts to fit Par 3 and then said it's distinguishable. How can we reconcile that? I respectfully disagree, Your Honor, that these are the same facts as Par 3. The agreement, in the agreement that matters, the Exhibit B is finally signed. Dial Columbus and DKC Columbus accepted assignment of Menard's rights and obligations. Now, if that's accurate, then Klauff was acting on behalf of an existing LLC as well as a nonexisting LLC when he signed that agreement. So that's Par 3. Well, the agreement that is being referred to, the February 12th document, is in the record, Your Honor, at Appendix 147. And it's clear from that document that DKC Columbus LLC is the signatory to that document. Dial Columbus is not a signatory or a party to that particular document. Sure, that's what he went back to. But it seems to me that contract law, the law regarding how you sort out ambiguous contracts just tells me this one needs a trial. Respectfully disagree, Your Honor, because as Judge Girard found the statute's not ambiguous, there's other cases from other jurisdictions that applied the same or nearly similar statute, and they didn't find any ambiguity in the statute and found that you don't look at intent because when the statute is clear, the intent is entirely irrelevant. The analysis is that a party who entered into an agreement... If everybody at the table when that agreement was signed thought it was an agreement between Dial Columbus and Menard and the document, in fact, reflects the Scrivener's Error when it recites DKC, this statute wouldn't apply, right? Well, I think it would apply, Your Honor. Why? Because there... The parties all understood he was acting on behalf of an existing corporation. If it had... In my hypothetical. In your hypothetical, Your Honor. But the agreement itself was done by, you know, a lawyer made a Scrivener's Error, which we've all... I disagree, Your Honor, because part of the argument being advanced here by the appellant is that the DKC, LLC, gave authority, and then the other argument is somehow they did have authority when this agreement somehow came to life later on. They're not arguing that this is Dial Columbus, that this was Scrivener's Error. In fact, they're saying just the opposite. They're saying he did have authority and it was DKC. They're saying your client gets a windfall because of the way the statutes work. I don't say that, Your Honor. The record reflects that Menards thought they were dealing with the same Klaus in February that they'd dealt with in August. And Dial had already agreed via Klaus in the purchase agreement to being obligated under this exact same contract that you're hanging your hat on now, and that doesn't seem to be a very fair outcome under the statute. And what is an issue of ambiguity of a statute? That's a question of law? Question of law. Okay. So we get to kind of just look at that. Is that true? If the court finds that Judge Girard was wrong and that the statute is not plain and unambiguous, they disagree with that analysis, it's a question of law, Your Honor. But I see I'm out of time. If I may have one minute to conclude. The only other point I would make, Your Honors, is the purchase agreement is with Dial Columbus, and that had an indemnity provision in there that his Honor read from the record from. The lease assignment is a different indemnity, a different set of obligations other than the purchase agreement. It was always intended that there would be two sets of obligations here from two different LLCs. This is not the Par 3 case. Okay. Well, yeah. Okay. Thank you, Your Honors. I have a question for you. Have you ever argued in the district court or in this court that the lease assignment was executed by Clough on behalf of Dial Columbus? It has never been argued that the lease assignment specifically was signed on behalf of Dial Columbus. Okay. Thank you. To go to Judge Loken's point toward the end here, that is exactly what this situation is, is a windfall for Menards based on a mistake. They received by operational law a personal guarantee that they did not negotiate for or ever believe that they had. The reality of the matter is even if whether it's under Nebraska's authority or under DKC's authority as the statute is referencing, the point is that Terry Clough had that authority before, well before the lease assignment became effective. For this reason, we would pray that this court would reverse and remand for further proceedings consistent with your holding. Whether you have argued that position in the court, the exhibits that are in the record were part of the trial that was before the district judge and are before us on appeal. All of that evidence was before the district court before somebody's judgment. Including the purchase agreement. Correct, Your Honor. That would include Clough's declaration where he says he negotiated the lease assignment on behalf of DKC. That was also in the record. That was also in the record, Your Honor. If there's no further questions, thank you. Thank you, counsel. This has been thoroughly explored with us. It's an interesting issue. We will take it under advisement and try to do our best. Thank you, Your Honor.